FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 MAR -7 AM 9: 32
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DUNCAN STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-091 |
| | ) | |
| BRIAN OWENS, Commissioner, Georgia | ) | |
| Department of Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), the Court screened his original complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. In a Report and Recommendation ("R&R") issued on January 2, 2013, the Court found that Plaintiff's complaint should be dismissed without prejudice for his failure to exhaust his administrative remedies prior to filing his lawsuit. (Doc. no. 9.) Following issuance of the R&R, however, Plaintiff submitted objections to the R&R as well as a document entitled "Amended Complaint," both of which contained previously undisclosed information indicating that Plaintiff had, in fact, exhausted one of the claims asserted in the complaint. (See doc. nos. 11, 12.) Because, based on those

filings, it appeared that Plaintiff's intent was for the Court to construe his various filings as a single complaint, the Court directed Plaintiff to file an amended complaint that included all of his allegations in one document. (Doc. no. 13.)

Plaintiff has now filed his amended complaint in compliance with the Court's instructions. Plaintiff's amended complaint supersedes the original complaint in its entirety. See Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*); Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007). Therefore, the Court will proceed to screen Plaintiff's amended complaint in accordance with the IFP statute. Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

I. **BACKGROUND**

Plaintiff names the following Defendants in his amended complaint: (1) Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDOC"); (2) Sharon Lewis, whom Plaintiff asserts is the Medical Director for the GDOC; (3) Damon Hininger, whom Plaintiff asserts is the Chief Executive Officer for the Corrections Corporation of America, the company that runs WCF; (4) FNU Peacock, a dentist at WCF; and (5) Pat Clark, the Medical Director at WCF. (Doc. no. 14, pp. 1, 5-8.)

Plaintiff first alleges that, while incarcerated at Coastal State Prison, a dentist at that

2

prison pulled all of his teeth except six and told him that he would be fitted for and provided with dentures within "around 4 months." (Id. at 8.) Plaintiff alleges that he was then transferred to Georgia State Prison, where he was informed that he had been placed on a waiting list to receive dentures and would be called when they were ready. (Id.) Plaintiff next alleges that he was subsequently transferred to WCF, where he filed a dental request to have one of his remaining teeth filled and was told by Defendant Peacock at that time that it would "take 3 years for Plaintiff to get his dentures." (Id.) Plaintiff alleges that he "pointed out" to Defendant Peacock that he "could not eat without pain, was losing weight, and was having bad stomach problems due to the inability to properly chew his food." (Id. at 8-9.) Plaintiff alleges that, in response, Defendant Peacock explained that there was nothing that he could do "because the State was not providing the money for teeth." (Id. at 9.) Plaintiff alleges that he next "wrote Defendant Clark to see if she would help," and that her response was also that "[t]here was no money for teeth, and [Plaintiff] would just have to wait." (Id.) Plaintiff contends that, due to having only six bottom teeth and no upper teeth, he is "constantly cutting his upper gums when he tries to eat," which causes him severe pain and serious infections that result in facial swelling. (Id.)

Plaintiff next alleges that he has a "severe shoulder problem that Defendants refuse to treat." (Id.) Plaintiff alleges that he was "on chronic care" for his shoulder issue prior to being transferred to WCF, but that he has been refused chronic care treatment at WCF and is instead simply given Tylenol. (Id.) Plaintiff asserts that he asked Defendant Clark for a

3

diagnosis of his shoulder problem and was told that he was on a waiting list for x-rays. (Id.)

Plaintiff additionally alleges that Defendants "have all conspired together to ensure windfall profits" by denying medical and dental care, adequate housing, and "personal hygiene." (Id. at 11.) Plaintiff alleges that, as part of the same conspiracy to boost profits, Defendants have created "severe overcrowded conditions" that are causing "unsanitary and unsafe conditions." (Id.) Plaintiff additionally alleges that prisoners are denied adequate housing and personal hygiene materials, that the prisons are overcrowded, that the laundry service is inadequate, that he was at some point refused clothing and bedding, that there was at some point no "yard call" or religious service, and that there is some sort of library deficiency. (Id. at 11, 14.)

As to the prison grievance procedure, Plaintiff asserts that he filed a grievance appeal concerning his dental claim on February 1, 2012, but that he never received a response. (Id. at 10.) Plaintiff additionally asserts that, on January 9, 2013, he was told by the WCF grievance coordinator that the appeal had been denied sometime in June of 2012. (Id.) Plaintiff also states that he filed an unspecified type of grievance concerning his shoulder claim on June 22, 2012. (Id. at 10.) Plaintiff asserts that he later received a response to his "shoulder grievance appeal" on December 11, 2012. Notably, Plaintiff initiated the instant lawsuit on September 21, 2012. (See doc. no. 1.)

In his request for relief, Plaintiff requests that he be given a jury trial, that he be immediately provided with dentures and chronic care treatment for his shoulder, that WCF's

4

population be decreased and adequate hygiene and clothing be provided, and that "90% of all Prison Contractor's Profits from Georgia be returned to the taxpayer." (Doc. no. 14, p. 14.) Additionally, in the section labeled "Parties to Action," Plaintiff notes that he is suing each Defendant in his or her individual and official capacities, and that he seeks $250,000.00 in compensatory damages and $250,000.00 in punitive damages from each Defendant. (Id. at 5-8.)

## II. DISCUSSION

### A. No Exhaustion of Shoulder Claim

Plaintiff's claim concerning his shoulder should be dismissed because of his failure to exhaust his administrative remedies with respect to that claim.[1] Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321 (1996), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate.

---

[1] In a simultaneously issued Order, the Court has directed that service of process be effected on Defendants Peacock, Clark, and Lewis for Plaintiff's Eighth Amendment claim of deliberate indifference concerning his alleged delay in receiving dentures.

5

Alexander v. Hawk, 159 F.3d 1321, 1325-26 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005), *cert. denied*, 548 U.S. 925 (2006).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); see also Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999).[2] Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'"

---

[2]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Jackson v. Dist. of Columbia, 254 F.3d 262, 269 (D.C. Cir. 2001); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

Johnson, 418 F.3d at 1155, 1156.

The administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on June 1, 2004. Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. SOP IIB05-0001 § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. See id. §§ VI(C)(2) & (D)(2). The SOP requires that an inmate be given a response to his informal grievance within ten calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. Id. §§ VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. Id. § VI(C)(2). Once the formal grievance is given to the counselor, the Warden/Superintendent has 30 calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has

90 calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2) & (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Here, it is apparent from Plaintiff's complaint that he did not exhaust his administrative remedies related to his shoulder claim prior to the commencement of this case, as is required under the PLRA. Plaintiff specifically admits that he filed a grievance of some kind concerning his shoulder claim on June 22, 2012, and then initiated the instant lawsuit on September 21, 2012 without having completed the grievance process. (Doc. no. 14, p. 10.) In fact, Plaintiff notes that he received a response to his "shoulder grievance appeal" on December 11, 2012, indicating that the grievance process was ongoing when he filed his complaint. (Id.) However, in order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Moreover, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. Therefore, Plaintiff's shoulder claim should be dismissed.

### B. No Claim for General Conditions of Confinement

Next, to the extent that Plaintiff attempts to assert such a claim, which is somewhat unclear from his amended complaint, his allegations regarding the general conditions of his confinement fail to state a claim for the violation of his Eighth Amendment right to be free from cruel and unusual punishment. As noted above, Plaintiff asserts, among other things,

8

that Defendants have conspired together to create generally unsanitary and unsafe conditions,[3] that prisoners are denied adequate housing and personal hygiene materials, that the prisons are overcrowded, that the laundry service is inadequate, and that he was at some point refused clothing and bedding. (Doc. no. 14, pp. 11, 13.)

However, limited periods of incarceration in unsanitary conditions are generally insufficient to evidence an Eighth Amendment violation. See, e.g., Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988) (depriving prisoner of toilet paper, soap, toothpaste and toothbrush while keeping him in filthy, roach-infested cell for a period of several days was not a constitutional violation); see also Chandler v. Crosby, 379 F.3d 1278, 1298 (11th Cir. 2004) (holding that there was no valid conditions of confinement claim under the Eighth Amendment where prisoners complained of excessive temperatures in their cells during the summer due to inadequate ventilation). Plaintiff's allegations concerning the conditions of his confinement are entirely conclusory, markedly vague, and, even if true, do not constitute sufficient claims under the Eighth Amendment. Simply put, Plaintiff's allegations fail to demonstrate any deprivation of "the minimal civilized measure of life's necessities." See Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (noting that the fact that the plaintiff had to sleep upon a mattress on the floor or on a table is not necessarily a constitutional violation). In other words, Plaintiff's allegations do not indicate the sort of

---

[3] As explained infra Part II.C, Plaintiff has failed to state a viable claim for conspiracy as well.

"extreme" deprivation that a valid conditions of confinement claim demands. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (noting that conditions of confinement claims must demonstrate "extreme" deprivations, and that such claims are "responsive to 'contemporary standards of decency'"). As a result, Plaintiff fails to state a viable claim against any Defendant based on his allegations concerning the general conditions of his confinement.[4]

## C.  No Claim for Conspiracy

To the extent Plaintiff suggests that Defendants are engaged in some sort of conspiracy intended to deny him medical and dental treatment or adequate conditions of confinement (see doc. no. 14, p. 11) and thereby boost profits, such allegations fail to state a claim upon which relief can be granted. As noted above, an attempted conspiracy claim supported only by conclusory, vague, and general allegations is subject to dismissal. Kearson, 763 F.2d at 407; see also Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("[A] complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. . . . It is not enough to simply aver in the complaint that a conspiracy existed."). To prevail on a conspiracy claim under § 1983, a plaintiff must (1) show that the parties had a "meeting of the minds" or reached an understanding to violate the plaintiff's rights and (2) prove an actionable wrong to support the conspiracy. Bailey v. Board of

---

[4]In any event, Plaintiff fails to connect those conditions-of-confinement claims to any named Defendant and, as explained infra Part II.D, Plaintiff may not hold Defendants Owens, Lewis, Clark, or Hininger responsible for the acts of their employees pursuant to the doctrine of *respondeat superior*.

10

County Comm'rs of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992). "[T]he linchpin for conspiracy is agreement, which presupposes communication . . . ." Id. Here, Plaintiff does not offer any specifics on when or how an agreement between any persons, let alone an agreement involving any Defendants, may have been reached to violate Plaintiff's rights. Rather, Plaintiff simply repeats his contention, unsupported by any alleged facts, that Defendants are engaged in a conspiracy to "ensure windfall profits" through the denial of medical and dental care and the overcrowding of WCF. Accordingly, Plaintiff has failed to state a viable conspiracy claim.

### D.   No Supervisory Liability

As to Plaintiff's sole remaining claim – deliberate indifference based on his delay in receiving dentures – Plaintiff is barred from holding Defendants Owens and Hininger liable for that claim based on the actions of their employees.[5] First, Plaintiff does not mention Defendants Owens or Hininger in his complaint aside from naming them in the caption of the complaint, explicitly asserting that he intends to sue them based on their supervisory positions, or attempting to vaguely connect them to an alleged conspiracy.[6] (See doc. no. 14, pp. 1, 5-6.) However, "[s]ection 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the

---

[5] As noted above, the Court has directed in a simultaneously issued Order that service of process be effected on Defendants Peacock, Clark, and Lewis based on Plaintiff's dental claim.

[6] As explained supra Part II.C, Plaintiff fails to state a viable claim for conspiracy against any named Defendant.

constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). The Eleventh Circuit has held that a district court properly dismisses defendants where a prisoner, other than naming the defendant in the caption of the complaint, fails to state any allegations that associate the defendants with the purported constitutional violation. Douglas v. Yates, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (citing Pamel Corp. v. P.R. Highway Auth., 621 F.2d 33, 36 (1st Cir. 1980) ("While we do not require technical niceties in pleading, we must demand that the complaint state with some minimal particularity how overt acts of the defendant caused a legal wrong.")). Thus, in the absence of an allegation of any connection between actions of Defendants Owens and Hininger and an alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against them.

Furthermore, Plaintiff's claim against Defendants Owens and Hininger is also inadequate to the extent that Plaintiff is attempting to hold them responsible for the acts of their subordinates. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193

12

F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

As noted above, the only mention of Defendants Owens and Hininger is in the caption of Plaintiff's complaint and then elsewhere in the complaint to specifically assert their liability based on their supervisory positions or their alleged participation in a conspiracy. Nowhere outside of that failed conspiracy claim does Plaintiff mention that they actually participated in any purported constitutional violation related to deliberate indifference.[7] Similarly, Plaintiff fails to allege a "causal connection" between these individuals and the asserted constitutional violation. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[8] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy. . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts

---

[7]As explained above, Plaintiff's allegations concerning his shoulder, the conditions of his confinement, and conspiracy fail to state a valid claim for relief. Where there is no valid underlying claim for a constitutional violation committed by an employee, a supervisor logically cannot be held liable for that nonexistent claim. Thus, as noted, the Court is only analyzing supervisory liability with respect to Plaintiff's dental claim.

[8]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Although Plaintiff alleges that Defendants Owens and Hininger have purposefully developed inadequate prison policies so as to "realize windfall profits" and that they abide by a general "policy of deliberate indifference" to serious medical and dental needs (doc. no. 14, pp. 11-12), those allegations are entirely conclusory and thus inadequate to demonstrate that supervisory liability should attach here. Hartley, 193 F.3d at 1269. Thus, to the extent that Plaintiff has named Defendants Owens and Hininger in this action, he fails to state a claim against them, and they should be dismissed from this case.

### E. No Official Capacity Claims for Monetary Damages

As noted above, Plaintiff is attempting to proceed against all Defendants in their individual and official capacities. (See doc. no. 14, pp. 5-8.) Moreover, Plaintiff seeks an award of monetary damages against each Defendant. (Id.) Notably, however, the Eleventh Amendment bars official capacity claims against state prison officials for money damages. Kentucky v. Graham, 473 U.S. 159, 169 (1985). Therefore, Plaintiff's official capacity claims for monetary relief against Defendants fail as a matter of law, and they should be dismissed as well.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the

following of Plaintiff's claims be **DISMISSED**: his claim of deliberate indifference concerning medical treatment for his shoulder; his claim concerning the general conditions of his confinement; his claim of conspiracy; and his official capacity claims for monetary damages. The Court further **RECOMMENDS** that Defendants Owens and Hininger be **DISMISSED**.

SO REPORTED and RECOMMENDED this 7th day of March, 2013, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE