ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2013 NOV 12 P 2: 18
CLERK
S. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| DUNCAN STONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 312-091 |
| | ) | |
| DR. MARK PEACOCK, Practicing Dentist | ) | |
| for Wheeler Correctional Facility, et al., | ) | |
| | ) | |
| Defendants.[1] | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Wheeler Correctional Facility ("WCF") in Alamo, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is presently before the Court on Defendant Sharon Lewis' pre-answer motion to dismiss.[2] (Doc. no. 30.) For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**.

I.  BACKGROUND

In his amended complaint Plaintiff named five defendants: (1) Pat Clark, the Medical Director for WCF; (2) Dr. Mark Peacock, a dentist at WCF; (3) Sharon Lewis, the

---

[1] The **CLERK** is **DIRECTED** to modify the docket as to Defendant Peacock in accordance with the Caption of this Order.

[2] Defendants Peacock and Clark, the other two remaining Defendants in this case, filed a joint answer to Plaintiff's amended complaint on May 9, 2013. (Doc. no. 23.)

Medical Director for the Georgia Department of Corrections (the "GDC"); (4) Brian Owens, the Commissioner of the GDC; and (5) Damon Hininger, the C.E.O. of Corrections Corporation of America. (Doc. no. 14.) Because Plaintiff is proceeding IFP, the Court screened his amended complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A. By Order dated March 26, 2013, the District Court dismissed Plaintiff's deliberate indifference claim based on lack of treatment of an alleged shoulder condition, as well as several other claims not related to Plaintiff's medical treatment. (Doc. no. 19.) The Court allowed Plaintiff to proceed with his claim against Defendants Clark, Peacock, and Lewis for deliberate indifference to his serious medical needs based upon delay in receiving dentures. (Doc. no. 16.) With respect to this sole remaining claim, the amended complaint alleges the following facts.

Plaintiff alleges that, while incarcerated at Coastal State Prison, a dentist pulled out all of his upper teeth and all but six of his lower teeth and told him he would be provided with dentures in four months. (Doc. no. 14, p. 8.) Plaintiff does not specify the date of this procedure in the amended complaint, but notably it appears from a grievance form attached to his opposition brief that the procedure occurred in approximately May 2011. (Doc. no. 32, p. 9). On an unspecified date after the procedure, Plaintiff was transferred to Georgia State Prison, where he was informed on January 10, 2012 that he had been placed on a waiting list for dentures and would be called when they were ready. (Doc. no. 14, p. 8.)

Plaintiff was next transferred to WCF on a date that, while not specified in the amended complaint, appears to have occurred after January 10, 2012, the date he was informed of being placed on the waiting list for dentures at Georgia State Prison, and

before February 1, 2012, the date of the first WCF grievance referenced in the amended complaint. (See id. at 10.) Upon his transfer to WCF, Plaintiff submitted a dental request to fill a cavity in one of his six remaining teeth, and during the resulting dental appointment Dr. Peacock informed Plaintiff that it would take three years for him to receive dentures. (Id. at 8.) Plaintiff explained that he could not eat without pain, was losing weight, and was having stomach problems due to his inability to chew his food, and Dr. Peacock responded that "there was nothing he could do because the State was not providing the money for teeth." (Id. at 8-9.) In addition to the symptoms that Plaintiff described to Dr. Peacock, he alleges in the amended complaint that, because he has neither upper teeth nor dentures, he cuts his gums when eating, which causes severe pain, serious infections, and facial swelling. (Id. at 9.)

On February 1, 2012, Plaintiff filed a grievance requesting dentures, and the Warden at WCF denied the request on an unspecified date. (Id. at 10.) According to the amended complaint, the Warden denied the grievance because "the State does only two sets of dentures per month and Plaintiff was on the list and would have to wait." (Id.) Consistent with this allegation, Plaintiff attached a purported copy of the Warden's grievance denial to his opposition brief, which explains that "[t]he Dental Clinic is allowed to do two dentures per month" and that Plaintiff had been placed on a waiting list "in the date range of May 2011, since this is when treatment would have started at the previous institution." (Doc. no. 32, p. 9.) Notably, this May 2011 date suggests that Plaintiff has now waited more than two years and five months but still has not received dentures. In comparison, Plaintiff's alleged wait time for dentures at Coastal State Prison was four

3

months. (Doc. no. 14, p. 8.)

Plaintiff alleges that he never received a written response when he appealed the Warden's denial of his grievance requesting dentures. (Id. at 10.) Plaintiff claims, instead, that on January 9, 2013, Ms. Evans, the WCF Grievance Coordinator, told Plaintiff that his dentures grievance had been denied six months earlier in June 2012. (Id.) Ms. Evans "would not give Plaintiff an exact date, nor would she explain why he had not been served with a formal printed response ...." (Id.) In contrast, Plaintiff alleges that he did receive a written denial in response to his appeal of a separate grievance regarding alleged inadequacies in the medical care he received at WCF for a shoulder condition. (Id.) Plaintiff attached an alleged copy of this appeal denial to his opposition brief, and it purports to be issued by Defendant Lewis as Medical Director of the GDC. (Doc. no. 32, p. 7.)

Plaintiff alleges that Defendant Lewis, as Medical Director of the GDC, is responsible for the "two dentures per month" policy that lies at the heart of his amended complaint because she "is responsible for the establishment of policies, practices, and regulations in regards to the Medical and Dental [sic] treatment of all Georgia Prison Inmates." (Doc. no. 14, pp. 5-6.)

## II. DISCUSSION

Defendant Lewis asserts that she should be dismissed from this case because (1) Plaintiff's allegations against her are insufficient to subject her to supervisory liability for deliberate indifference, and (2) she is entitled to qualified immunity. (See doc. no. 30-1.) As explained below, Defendant's motion to dismiss should be denied.

4

A.      **Legal Standard**

In considering a motion to dismiss under Rule 12(b)(6), the court tests the legal sufficiency of the complaint, not whether the plaintiff will ultimately prevail on the merits. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The court must accept as true all facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007); Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). The court, however, need not accept the complaint's legal conclusions as true, only its well-pled facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. With these principles in mind, the Court turns its attention to the instant motion to dismiss.

B.      **The Amended Complaint Sufficiently Alleges Supervisory Liability.**

Defendant argues that Plaintiff's allegations are insufficient to subject her to supervisory liability. (Doc. no. 30-1, p. 7.) Supervisory officials such as Defendant "are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of

*respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted). Rather, in order to impose liability on a supervisory official, a plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)).

"The causal connection can be established when a history of widespread abuse[3] puts the responsible supervisor on notice of the need to correct the alleged deprivation, and [s]he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1235 (11th Cir. 2003)).

Here, Plaintiff alleges that Defendant Lewis personally participated in the alleged constitutional violation by implementing a policy that limits WCF to only two denture procedures per month, denying his grievance appeal, and refusing to order that he receive dentures. (Doc. no. 32, pp. 1, 3-4.) These allegations are sufficient to establish, at least at this early stage of the proceedings, a causal connection between Defendant and the alleged

---

[3] "Deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

6

constitutional violation.

Defendant argues that Plaintiff fails to allege her involvement with the denial of his grievance appeal. (Doc. no. 34, pp. 1-2.) However, this is a fair inference of the amended complaint in light of Defendant's position as Medical Director of the GDC, especially when one also considers that (1) the amended complaint alleges Plaintiff's appeal was denied informally and not in writing; and (2) Defendant apparently did issue a written denial of Plaintiff's appeal with respect to his grievance concerning inadequate medical care at WCF for his shoulder condition (doc. no. 32, p. 7). Discovery is needed to determine Defendant's actual role, if any, in events that relate to Plaintiff's claim.

### C.  Defendant is Not Entitled to Qualified Immunity at this Time.

Defendant also argues that the Court should dismiss the claim against her because she is entitled to qualified immunity. (Doc. no. 30-1, p. 7.) "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 230 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). "To invoke qualified immunity, the official must first establish that [s]he was acting within the scope of [her] discretionary authority" when the alleged violation occurred. Case v. Eslinger, 555 F.3d 1317, 1325 (11th Cir. 2009). For an official's acts to be within her discretionary authority, they must be "(1) undertaken pursuant to the performance of her duties and (2) within the scope of her authority." Jones v. City of Atlanta, 192 F. App'x 894, 897 (11th Cir. 2006) (*per curiam*) (punctuation

7

omitted) (quoting Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995).) If the defendant shows that she was acting within her discretionary authority, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).) Put another way, a motion to dismiss raising the defense of qualified immunity "will be granted if the 'complaint fails to allege the violation of a clearly established constitutional right.'" St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (quoting Chesser v. Sparks, 248 F.3d 1117, 1121 (11th Cir. 2001)).

"A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). "If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity." Storck v. City of Coral Springs, 354 F.3d 1307, 1314 (11th Cir. 2003). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Defendant has satisfied the threshold requirement of showing that she was acting within the scope of her discretionary authority, because as Medical Director of the GDC she oversees the establishment of medical and dental policies, and these policies are the

basis of the alleged violation. Accordingly, the Court must determine whether Plaintiff alleges a violation of a constitutional right which was clearly established at the time of the violation. St. George, 285 F.3d at 1337; Townsend, 601 F.3d at 1158. Having already found herein that Plaintiff alleges sufficient facts to state a supervisory liability claim against Defendant Lewis, see supra Part II.B, the Court must only determine whether the right to receive dentures without prolonged delay was clearly established at the time of the alleged violation.

Plaintiff has sufficiently alleged a violation of a clearly established constitutional right, as his allegations are analogous to those in Farrow v. West, 320 F.3d 1235 (11th Cir. 1994). In Farrow, the Eleventh Circuit held that the plaintiff asserted a valid deliberate indifference claim based on a fifteen-month delay in receiving dentures, during which time the plaintiff suffered from pain, bleeding, swollen gums, and periodic weight loss. Id. at 1245-48. In so holding, the Eleventh Circuit stated that "delayed treatment for injuries that are of a lesser degree may also give rise to constitutional claims." Id. at 1247 (quoting Harris v. Coweta County, 21 F.3d 388, 393-94 (11th Cir. 1994) (internal quotations and punctuation omitted)). Here, Plaintiff alleges a similar prolonged delay in receiving his dentures, during which time he experienced severe pain, infections, stomach problems and weight loss. (Doc. no. 14, pp. 8-9.) Therefore, in light of Farrow, Defendant should not be dismissed on the basis of qualified immunity at this time.

## III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant's motion to dismiss be **DENIED**. Should this recommendation be adopted as

9

the opinion of the District Court, Defendant should be required to file an answer to Plaintiff's amended complaint within fourteen (14) days of such adoption, consistent with Federal Rule of Civil Procedure 12(a)(4)(A). Upon the filing of Defendant's answer a Scheduling Notice setting the deadlines in this case should issue.

SO REPORTED and RECOMMENDED this 12th day of November, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE